May it please the court. I'm Robert Jobe. I'm appearing today on behalf of the petitioner Swaraj Singh. In March of 2004, Mr. Singh was on his motorcycle and he was diverted by two terrorists, two members of the Khalistan Commando or Liberation Force, who accused him of playing a role in the arrest of one of their colleagues. At that point, one of these men punched him in the face, but more importantly, one of them put a gun to his head and threatened to kill him. In the immigration judge's account of this incident, he says simply that he, in 2004, he was approached by terrorists and punched in the face. There's no mention of having a gun put to his head, no mention of being threatened with death. I'm curious, Mr. Jobe, just because there's not a lot of time, and I would want to ask this anyway, that your client's asylum, application for asylum states, as you know, that your client was persecuted on account of his religion and his membership in a particular social group, but your client failed to make these arguments in front of the IJ or the BIA and argued instead that he was persecuted on account of imputed political opinion, and now then he steps back from that, says it's not political opinion, and so why shouldn't we, and then apparently now you informed us that he's converted to Christianity, I guess, but I know that we judged this based on what the evidence was here, but who is Mr. Singh, and what, you know, what is his social group, and what, it's been a long time, which in some ways it's hard not to see that, even, you know, the latter apart, as the sort of credibility of what he's claiming. Well, in this case, obviously, his credibility is not... It isn't, you know, but I just thought I'd say the elephant in the room. Yeah, well, his credibility is not in dispute. The issue here is, the threshold question is, did he suffer past persecution? And on that particular point, it seems to me that you got a remand because the board didn't consider, first off, it didn't consider the harm. You know, there were two incidents here, the March of 2004 incident, when literally, he put it, they put a gun to his head and threatened to shoot him, and neither the immigration judge nor the Board of Immigration Appeals even mentioned it, and then the July of 2004 incident, where these same terrorists, they tracked him down to his home, and again in front of his mother and father, they threatened to kill him. But he still has to, I guess, he still has to be on account of something. We'll come to that in a second, Your Honor. Yeah, that's part of the past persecution thing. But the threshold question is, did he suffer harm that rises to the level of persecution? And it seems to me, these are the most important elements of his past persecution claim, at least as far as the harm goes. But incredibly, neither the BIA nor the IJ mentioned them at all. They didn't incorporate them into their analysis. Based on that, in terms of the harm at issue here, the case has to be investigated. Didn't the Board just make an alternative decision as well? Not on past persecution. No, on account. No, it didn't. It only did that with respect to government persecution. And the reason for that, Your Honor, going back to your question, is you're right. When he was in front of the immigration judge, he checked those two boxes, right? But the immigration judge never opined in any way about whether what happened between him and the terrorists was on account of persecution. Again, his conclusion that there was no past persecution stemming from these interactions with these terrorists, it stems solely from his finding that the harm didn't rise to the level of persecution. He didn't say anything about whether it was on account of. And that issue, the Board didn't address either. Well, he also, though, too, when he got questioned after, apparently, I don't think that that element of his claim is particularly strong. To me, the strength of this case is his interactions with these terrorists. And in that regard, on the past persecution claim, neither the Board nor the IJ considered whether the harm rises to the level of persecution. So, do you still have to prove on account of? Well, the on account of here, Your Honor, is the problem is that no one's ever ruled on it. You know, in front of the immigration judge, again, he put forth two things. Yeah, but just tell me what you think the on account of is. On account of, I think the strongest claim is that he was associated with this military outfit in the government. They think he was linked to the arrest of these two people. So, would it have imputed political opinion? I think it's probably imputed political opinion. I think that's the strongest point. And was that point put before the IJ and the BIA? It was raised at the BIA. Was it, it wasn't put before the IJ? I don't think it was checked on the application, but at the BIA level, it was. It was raised at the BIA. Yeah. Like a 30-page brief file in front of the BIA. What do we do with the relocation? Because even, even if, even if you got past the persecution and the on account of question, you've got the relocation problem. Yeah, the relocation, the Board, again, it just didn't do its job here. Because, obviously, the relocation issue, it's a two-part test. I mean, first, the issue is, well, can he relocate and be safe? And the judge addressed that. I want to come back to that in a second. But the second part of the test is reasonableness. And, and, and what, and what comprises reasonableness aside from safety? Well, for example, you would have to consider that he doesn't have any family outside of Punjab. Neither the Board nor the IJ considered that. You'd have to consider his education level. He went to high school. You'd have to consider. It actually says he claims he's got law experience. Now, I think that's a mistranscription there. And the, if you look at the application, he went from high school. And no family outside of, of Punjab, of the Punjab counts for a reasonableness claim when he's seeking asylum in the United States away from his family? Yes, yep. The Board has recognized that, Your Honor. That's the development. See, one of the things we have to consider is, is it reasonable for him to move? Is he going to be able to find employment elsewhere in India, for example? This guy, he went from high school to playing basketball. Is he going to be able to continue to play basketball? Is that, is that the only job prospect he's going to have outside of Punjab? The IJ should have discussed his psychological state because he's been diagnosed as suffering from depression. Is it reasonable to expect him to move to some other part of India, given his psychological state and the causes for that? But how is any of that cured by, by coming to the United States under an asylum claim? Well, Your Honor, unfortunately, you're not. I mean, that sounds like, if you're right, it's unreasonable for him to be anyplace. He's going to be away from his family. He's, he's, he's got a, he's got a weak psychological state. He's going to be, he's going to be depressed. No, unfortunately, Your Honor, what you, what I feel like you're doing here is you're doing the BI's job. Well, I understand, I understand, I understand that, that, but I'm still trying to figure out what comprises the reasonableness test and the things that you've offered me don't exactly sound reasonable. Well, these are the factors that the BI itself has said that it has to consider in assessing reasonableness. It has to consider all the totality of the circumstances, including many of these that it specifically has identified. You, this Court, unfortunately, doesn't have the right to, to do the BI's work for it, and certainly I don't think you want to do that. The BI had an obligation here to apply a two-part test. It didn't apply a two-part test. All it looked at is whether he would be secure in another part of India, and it didn't, it didn't even address the issue of reasonableness. Now, this is important because in that 30-page brief that was filed at the BIA, Mr. Singh's former counsel specifically argued that the IJ didn't consider reasonableness. The issue was directly raised before the Board, and yet the Board ignored it. That requires a remand. The other... What are you asking us to do? What's the, what's your... I think what you've got to do here is remand the whole thing back. I don't think you need to make any findings, really, about, you know, what the evidence compels this, that, or the other, because on the past persecution thing, the Board didn't address the threats, and it didn't address the on-account of requirement that you're referring to. Obviously, this Court doesn't get to address that in the first instance. When it comes to relocation, they didn't address reasonableness. You don't get to do that in the first instance. I mean, the only issue that, you know, was really ruled upon, and that's before the Court, is, is it would it be safe for him to move to some other part of India? And on that, again, the analysis is so lame. They only considered... The BIA just mimics. If you compare the two decisions, it's like the Board copied the IJ's decision. Its statement of facts makes the same omissions as the IJ's. And on safety, same omissions as the IJ's. There's no, no discussion here in terms of whether he'd be safe about his testimony that he's very well known in India. There's no discussion about the fact that he played internationally. They say the one thing they point to is he was on TV 10 years ago, but what about all the news articles that he presented showing that he was in the news all the time? What about the fact that he traveled to almost every state in India playing basketball? What about the fact that he played internationally? Don't they have to take that into consideration in determining whether he has a national profile? They didn't. This decision here is so inadequate, it's, it's not reviewable by you at this point. The best thing here is to just kick it back and make them redo it. Save your, you want to save the 15 seconds for it, but I'll give you a minute, Mr. Thank you. Good morning, Your Honors. My name is Bo Stanton, here today on behalf of the United States Attorney General. There's one overarching issue in this case, and that is whether the petitioner has, in this case, shown that the record compels the conclusion that the agency below erred in denying him asylum, withholding removal, and protection under the Convention Against Torture. As we argue in our briefs... Since you don't have a lot of time, I think the strongest points, and I'm only speaking for myself at this point, have to do with the BIA's failure to address all of the petitioner's arguments, mainly that he was threatened by terrorists and his brother had been killed. What's your response to that? Why does it not, why can we still deny the petition? Your Honor, that is factually incorrect. The agency below did consider the threats to petitioner and also did consider the death of petitioner's brother. Let me go ahead and walk you through the record, starting with the Board of Immigration Appeals decision. If you go to page four of the record, that big, fat first paragraph, you go down to the middle of it. They say the respondent never experienced significant physical harm and considered cumulatively, as he argues on appeal, we cannot find that the respondent's experiences established persecution. And then, look at the citation. They cite to page 30 of respondent's brief. And if you go to that in the record, which is page 61 of the record, and it is the first... I'm talking about the brief on appeal. Oh, the brief on appeal to the Board of Immigration Appeal. Yes, Your Honor. And if you go there, you'll see that he argues that the threats respondent received were menacing and escalating. That's what he argues on page 30 of his brief. And that is exactly what the Board of Immigration Appeals cited to... That doesn't answer Judge Callahan's question. There's no reference here to the death of his brother. There's no reference here to the fact that the KLF folks put a gun to his head just that he was hit in the face. And no reference to the incident at his parents' home when the KLF guys came by and threatened his parents and him. Your Honor, in this case, you must look at both decisions. Under the standard, the Board of Immigration Appeals issued a decision and then cited... Sometimes we have to look through to the IJ's decision. But when the BIA issues, as in this case, a considered decision and not a one-line decision, we usually take the BIA at the BIA's word. Well, there is cases out there that say when they cite to the immigration judge's decision and if the explanation appears inadequate on its face but cites the immigration decision, you must reach down to that decision and consider what he decided. And if you go back to his decision... And I'll walk you through this because he refers to the brother's deaths not one time, not two times, but three times. So if we go ahead and turn to AR... You're talking about... Now you're talking about the transcript of the... No, no. I'm actually talking... I mean, he also mentions it in the transcript at AR 154. He specifically asks during the merits hearing if the only basis that he's talking about from 2007 is his brother's death. And you're apprised of that. Yes. Now, you're going to refer us to the decision? Yes. Now, let's walk through the decision. Are you on the BIA or the IJ? Immigration judge's decision. What page? Let's go ahead and start with page 108. 108. Let me see. Yes, the first paragraph, you can see... Starting with... Just to make sure we're on the same... Yes, the first paragraph, 108, according to respondent. Okay. So if you were to read this paragraph out loud, you say, again, according to So the IJ found him not credible, right? Yes, Your Honor. So what do we do with that? Well, the Board of Immigration Appeals did not address that and only focused on the merits of his claim, and so the credibility determination is not before this court. No, but so don't we... Well, it could be that the IJ didn't give this much credit at all, because he found him not credible. Well, he did make this finding later on in his decision also. If you want to go ahead and turn to AR-10, excuse me, 110 of the decision, it goes on. Actually, if you go to the second paragraph, the first full paragraph... Beginning with what word? Beginning, given the respondent's testimony as stated. Okay, got it. If you follow down to about halfway through that paragraph, you'll see, And again, according to the respondent, the only time anyone in India has in any way expressed interest in him was in October of 2007. And then if you were to turn the page, again, the immigration judge specifically references his brother's death. And this is the final page of the immigration judge's decision, and it's that last paragraph, the first paragraph on top. It says, There has not been any contact between the terrorist and the respondent since the spring of 2004. And for the reasons noted, I find that the death of the brother in October 2007 cannot reasonably relied on by respondent in effect to buttress his claim. So here you have, in the immigration judge's decisions, multiple instances of him referring and discussing and considering his brother's death. The immigration judge's decision was sustained, cited to the Board of Immigration Appeals, so therefore you must consider both these decisions in their entirety when you decide this petition for review. So when you look back and consider all these decisions, not only to discuss the brother's death, but they also discuss the threats to him and his family. And the Board of Immigration Appeals found that this was not sufficient to establish past persecution. Where in the decision does the I.J. recognize that he was threatened with a gun by the KLA? I don't. Off the top of my head, Your Honor, I would have to glean through. Right. You have to search deeply for it. You have to go all the way through to the transcripts where he's testifying to find it. Well, Your Honor, because the BIA cited to page three of the I.J.'s decision, which is 107, but that's only where the I.J. says he was punched in the face. There's no mention of the gun. Then the immigration judge perhaps didn't say it. I would have to go back and read the decision. Perhaps he found him not credible on that point, but the BIA does not comment on credibility. But the I.J.'s decision at page three is cited at the top of page two, which is AR4, of the BIA's decision. So, you know, we're stuck just a little. If you're going to go back to the I.J. If we're going to look through the I.J.'s decision, then we have to do with what the BIA cited, and they cited page three, and he doesn't refer to the gun. Right. But they did cite to page 30 of Respondent's Brief. After the Respondent in that brief had argued. That was a very general reference that you gave us about escalating problems. Well, that wasn't my fault. That's Petitioner's Counsel's fault for making a general statement in Respondent's Brief. But that came after a thorough discussion of the facts of the case, which included the pistol to the head. And so you can see that the Board of Immigration Appeals considered. Because if you go back and look, if you compare the BIA decision to the appeal brief filed, I mean, they address every single point that's raised by him. They go on and argue because Petitioner's Counsel claims, you know, disingenuously, I might add, that they never argued imputed political opinion. But there it is in the appeal brief. There was never an argument on account of religion, on account of a particular social group. I guess I want to ask you that. Can we consider Petitioner's claims now that he was persecuted on account of religion and his membership in a particular social group if he did not raise those claims on appeal? No, Your Honor. That is an unexhausted claim. He should have raised that before the Immigration Judge or the Board of Immigration Appeals if he wanted it considered within the context of his removal proceedings. So the Immigration Judge just treated this as imputed political opinion or political opinion. It's unclear. He never actually reached on account of ground. The tone of the matter sounds more like political opinion than anything. Or Sikh religion. Actually, Sikh religion never actually came out. There was never any discussion. If you go look at the transcript, there isn't any evidence that the police or the terrorists targeted him. There's no association with the terrorists. Well, yes, the police questioned him because of that, because his teammates, his neighbors, his friends. That sounds like imputed political opinion. Well, no, there's a distinction here. There's no evidence in the record where the petitioner says the police officer targeted me because I was anti-government like these terrorists. They questioned me because I was at a restaurant with these two terrorists, and I approached my coach to let them know, and then they told the police, so the police came and contacted me. They were doing their job. This was a legitimate investigation by the police, and there's no evidence in the record to suggest that they targeted him for any other reason besides trying to make sure that these terrorists didn't harm any other individuals. Even if we thought that the BIA's decision was deficient on those two grounds, it might still be sufficient if the BIA is correct that he can safely and reasonably relocate elsewhere in India. Did the BIA make both of those findings? I'm so sorry, can you repeat that question one more time? No, I'm interested as to whether the BIA made the appropriate findings. That is, that he not only could relocate safely and that it is not unreasonable to expect him to do so. Well, it appears because, you know, they just kind of give the statement talks about it. It seems like they folded that analysis in together with one another. They talked about the fact that the last incident he experienced was in 2007 when the police came to his parents' home. Then they also talk about the last time he had any sort of national identity was that last basketball that he played in in 2003. What do you think that the reasonableness inquiry is supposed to be? Separate and apart from the question of whether he can safely relocate. Well, there's a lot of different factors that are actually laid out in the regulations that essentially guide posts from which, basically, does he have any health concerns? Is it economically impossible for him to relocate? And on appeal to this court, Petitioner's Counsel does not cite any evidence because that's what's incredible. If you go back and look at his brief, he's heavy on the law but short on the evidence. There is no evidence that it would be unreasonable for him to relocate. If we felt that the BIA didn't address relocation, why shouldn't we remand and allow the BIA to address the issue in the first instance? Oh, because that is an alternative finding. You do not need to consider that finding in order to dispose of this petition for review. The fact that they found that he lacked past persecution means he does not have a well-founded fear of future persecution. So his case is dead in the water on that ground alone. But then they found in the alternative. So if you find an error in the BIA's decision regarding the relocation, you can kick it out. It's harmless error. You don't need to decide that to decide this petition for review. And I realize that my time is up. Your time is up, yes. Thank you. I was just looking at the BIA's decision. Thank you very much. We appreciate your argument. Thank you. Mr. Joe, I'll give you a minute. Just on me. Sure. Three quick points. First, Judge Callahan, the issue of the unaccounted with respect to the terrorists, his interactions with the terrorists, it's not before the court. Neither the IJ analyzed that question nor the Board of Immigration Appeals. We don't get to analyze that in the first instance here. I mean, we're not trying to convince you that it's unaccounted. All we're trying to say is no one ever ruled on it. It's got to go back. Judge Bybee, your issue about whether this countrywide, you know, if we lose on countrywide, does that resolve the whole case? No, it doesn't, because if past persecution, if he suffered past persecution at the hands of the terrorists, if we include the threats and it rises to the level of past persecution and it's unaccounted, an issue that's never been addressed, then we have to presume that he can't relocate and we have to presume that it's unreasonable for him to do so. And no one's ever done that analysis. So it would have to go back, even if you think they're right on the countrywide issue. And this issue here about we didn't argue that it's not unreasonable to, you know, for him to, it would be unreasonable for him to relocate, well, of course we're not arguing the merits of that, because the board didn't address it and neither did the IJ. And, again, it's not your job to decide those issues in the first instance. The case has to be remanded so the board can do its job. Okay. Thank you, Mr. Jones. Thank you very much. We appreciate your arguments. Have a safe trip back. Thank you so much.
judges: Paez, Bybee, Callahan